[No. 19935.  Department One.  June 15, 1926.]

MATIE E. NICHOLS, *Appellant,* v. OLYMPIA VENEER COMPANY, INCORPORATED, *Respondent.*[1]

[1] CORPORATIONS (69)—DIVIDENDS—RIGHT OF STOCKHOLDER.  Where an industrial company is operated upon the cooperative plan and stockholder operatives are allowed eight dollars per day, while non-stockholder operatives are allowed but four dollars a day for similar work, the excess, to the extent of wages for similar work, must be considered as a stock dividend, entitling a stockholder who is not an employee to a distributive share of such dividends; and a finding that such difference in wages was not disproportionate to their value and represented a reasonable scale of wages, are not sustained where it appears that only about one-fifth of the stockholder operatives were performing work of the value of eight dollars a day or work different from that performed by all other employees.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered March 16, 1926, upon findings in favor of the defendant, in an action to recover stock dividends.  Reversed.

*Vance & Christensen,* for appellant.

*A. W. Tyler,* for respondent.

FULLERTON, J.—The respondent, Olympia Veneer Company, is a corporation organized under the laws of this state, and is engaged in the business of manufacturing and selling wood products, particularly veneer.  The shares of its capital stock have a par value of $1,000 each.  The appellant, Matie E. Nichols, is the owner of one of such shares, having acquired it as the heir of her husband, who was one of the original subscribers to the capital stock of the respondent.

The respondent, while organized under the general statutes relating to the formation of manufacturing

[1]Reported in 246 Pac. 941.

and business corporations (Rem. Comp. Stat., §§ 3803 *et seq.*), has, by reason of its contracts with subscribers of its capital stock and the provisions of its by-laws, certain co-operative features. These are noticed in some detail in our cases of *Nichols v. Olympia Veneer Co.*, 135 Wash. 8, 236 Pac. 794, and *State ex rel. Howland v. Olympia Veneer Co.*, 138 Wash. 144, 244 Pac. 261, and need not be set out in full here. Those most pertinent to our present inquiry are: That each stockholder is entitled to employment by the corporation; that all stockholders employed, regardless of the nature of the work in which they may engage, shall receive an equal wage; and that each stockholder shall be entitled to one pro rata share of all profits arising from the business of the corporation.

The respondent was organized as a corporation in 1921. For the year 1922, none but stockholders were employed in its plant, and these received a wage of four dollars per day. For the year 1923, the wages of the stockholders were increased to five dollars per day, and certain non-stockholders were employed during that year at a wage of $4.40 per day. In 1924, the wages of the stockholders were increased to six dollars per day, and those of the non-stockholders reduced to four dollars per day. In 1925, the wages of the stockholders were fixed at eight dollars per day, the wages of the non-stockholders remaining as of the figure of the prior year. The appellant's husband, prior to his death, worked at the plant as an employee of the respondent, and, of course, received the current wage. After his death, which occurred in December, 1922, it seems that, for a time being, the appellant, as the owner of his share of stock, was paid the difference between the current wage of a stockholder and the current wage of a non-stockholder.

The corporation, prior to 1925, never declared a dividend, as such. In the beginning of the year 1924, however, the trustees "voted and allowed" to each individual stockholder, working at the plant between January 1 and October 1 of the year 1923, the sum of $175 per month, as additional compensation for the services rendered by the stockholder. The appellant, who was not such an employee, was not permitted to share in the allowance.

The present action was instituted in May, 1925. In her complaint, the appellant set up two causes of action. In the first, she alleged that the allowance made to the stockholders, as additional compensation for services rendered in 1923, was, in its substance and effect, a dividend, in which she was entitled to share, and that her *pro rata* share thereof was the sum of $1,500. In her second cause of action, as later amended, she alleged, in substance, that the wages paid the working stockholders since January 1, 1925, are grossly disproportionate to the value of the services rendered; that the actual value of such services did not exceed four dollars, and that the excess paid over that sum was, in effect, a division of the profits of the corporation, and that she is entitled to share in such division. Issue was taken on the allegations of the complaint, and, on a trial had before the court sitting without a jury, a judgment was entered in favor of the appellant on her first cause of action, and against her on the second. The appeal is from the adverse part of the judgment.

As a basis for its conclusion on the second cause of action, the court made the following findings of fact:

"I. That defendant corporation has ninety-two (92) stockholders working in the plant of defendant corporation, and that in addition thereto there are employed in the plant forty-six (46) non-stockholders.

And that the wages paid to the stockholders is the sum of Eight ($8.00) Dollars per day, and that the wages paid to non-stockholders working in the plant is the sum of Four ($4.00) Dollars per day.

"II. That defendant corporation is engaged in the manufacture of veneer panel at Olympia, Washington, owning its own site and machinery and transacting business totaling many thousands of dollars annually. That practically all of the stockholders in said company have been with it since its inception and by their labor and close attention to business have developed the plant and business to its present condition. That said company was organized and is owned and controlled by laboring men, and at all times has been and is officered, managed and operated by laboring men, all of whom are required by the by-laws of the company and the subscription agreement heretofore mentioned, to be stockholders. That all of said stockholders, including the officers and managers, receive the same wage.

"III. That all the company's business is transacted by its stockholders rather than by its Board of Trustees, except the ordinary routine business, and that the success of the company has been due in large measure to the judgment and attention to business of the stockholders, to an extent greater than is ordinarily the case in a corporation.

"IV. That by reason of the fact that the stockholders have changed so little since the organization of the company, they have become skilled in their various respective positions and are familiar with the details of the business of the company. That many of the stockholders are skilled mechanics, and were experienced in mill work and logging industry prior to their connection with defendant corporation.

"V. That the positions of responsibility in the plant, the operation of all the more important machines, and the processes of manufacture calling for care and experience, are almost altogether held by stockholders. That with the exception of two or three cases, the character of work performed by the non-stockholders is of minor importance and little, if any, responsibility.

"VI. That the scale of wages paid to non-stockholders laboring in the plant, namely, Four Dollars ($4.00) per day, is a fair and reasonable scale of wages for the character of services performed by the non-stockholders. And that the scale of wages paid to stockholders, namely, Eight Dollars ($8.00) per day, is a fair and reasonable scale of wages for the character of work and nature and value of the service rendered to the corporation by the stockholders. And that the amount paid to stockholder employees working in the plant is not grossly disproportionate to the amount paid to employees working in the plant who are not stockholders, taking into consideration the character of work and value of the services respectively rendered by them.

"VIII. That the wages paid to both stockholders and non-stockholders are paid out of the operating expenses of the corporation and as a part thereof, and that at the close of the year are deducted from the gross earnings of the company. That said corporation pays dividends to its stockholders, including plaintiff. That it recently declared a four per cent (4%) dividend on the first six (6) months business for the year 1925, amounting to One Hundred and Four Dollars ($104.00) to each stockholder, and that said dividend was paid to plaintiff along with all other stockholders. And that the difference in the wages paid to stockholders and non-stockholders in defendant corporation does not constitute a distribution of dividends, but is a fair and reasonable difference justified by all the facts and circumstances in evidence in the case, and that plaintiff is not entitled to receive any amount because of said difference in scale of wages paid to stockholders and non-stockholders in defendant corporation."

[1] The evidence, as we view it, does not justify, in their entirety, the findings and conclusions of the court. It does not justify the finding that all of the stockholders occupy responsible positions. Of the ninety or more working in the plant, the far larger number do only routine work of the same character as that performed

by the non-stockholders. It does not necessarily follow, however, that the services of these are not of greater value to the corporation than is the service of the non-stockholder. The stockholders have an interest in the success of the business, aside from the wage received, and it would follow, from the nature of the relation, that they would take a greater care, and exercise a higher degree of diligence, in performing the work assigned them than would one whose sole remuneration was the wage he received. The effect of this is not only increased efficiency, but a fewer number will perform the same quantity of work. But it would be extravagant to say, we think, that the value of their services was twice the value of the service of a non-stockholder performing the same work. The test the record affords is a comparison with the wages paid in similar plants for similar work. In these, seemingly, all of the routine work is done by hired employees, whose sole remuneration is a daily wage. In the one where the facts are shown with the greatest detail, the wages range from $3.80 per day to $5 per day for routine labor; the employees being started at the lower wage, and their pay gradually increased as they become familiar with the work and as their labor becomes more efficient. In the plant noticed, however, there are employees whose work requires special skill, and who are paid a wage equal to the wage allowed in the respondent's plant. What proportion these bear to the whole number is not shown with definiteness, but, as we read the evidence, it does not exceed one-tenth of the entire number.

In the respondent's plant also are a number of positions, the work in which requires a degree of skill and the exercise of a judgment not possessed by the ordinary workman. The fixed wage for these employees is not extravagant, and the record indicates that it is

even less than some of them could obtain, should they choose to quit the work and take employment elsewhere.

The appellant's right is to share in the profits of the corporation. As a stockholder, she is entitled to a just proportion of all the earnings of the corporation that may justly be classed as a division of the profits, whatever may be the form adopted for their distribution. The respondent is permitted to select the manner, and, if it chooses to do so in the form of wages, it is acting within its rights But by calling the distribution wages, it cannot deprive the appellant of her just proportion thereof. It cannot, by paying excessive or extravagant wages to the working stockholders, deprive the appellant of her share of the profits of the business.

The question then is, are the wages allowed the working stockholders excessive or extravagant? The solution of the question is complicated by the nature of the relation of the stockholders to each other. Each is entitled to employment, and no one may receive a higher wage than another. The services rendered are unequal in value, when measured by a money cost; that is to say, the services performed by the greater number of the stockholders could be procured by hire at a less cost than eight dollars per day, while, for the remainder, the cost of the services performed by them, if hired, would result in no material reduction. As found by the court, there were ninety-two stockholders working in the plant. Of these, not more than twenty performed services, the cost of supplying which by hired labor would equal eight dollars per day per man. The remainder, seventy-two, were performing services the cost of which could be supplied by hire at the rate of four dollars per day per man. To hire the services

performed would, therefore, cost $448 per day, whereas the stockholders were actually receiving $736 per day. Making a liberal allowance for the increased efficiency of the services of a stockholder over that of a non-stockholder, we think this too great a discrepancy, and that there is in it a partial distribution of profits. While there is no exact mathematical rule that can be applied, and any rule of apportionment must be somewhat arbitrary, a more just division, we think, would be to hold that six dollars per day represented the extreme value of the services rendered by the several stockholders, and that two dollars per day of the sum paid them represented profits. Since the appellant is a stockholder and entitled to share in the profits, she is entitled to recover from the corporation a sum equal to that paid as profits to the other stockholders. This would be two dollars per day for the number of working days between January 1, 1925, and the time the judgment, from which she appeals, was entered in the court below.

The judgment entered upon the appellant's second cause of action is reversed, and the cause remanded with instructions to enter a judgment in accordance with this opinion.

Tolman, C. J., Holcomb, Askren, and Bridges, JJ., concur.